IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN E. COMAN, JR.,<br><br>        *Plaintiff,*<br><br>  v.<br><br>ACA COMPLIANCE GROUP,<br><br>        *Defendant.* | Civil Action No. 2:21-cv-976<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff John E. Coman, Jr. ("Coman") filed this employment discrimination suit against Defendant ACA Compliance Group ("ACA") in the Court of Common Pleas of Allegheny County, Pennsylvania.   Specifically, Coman alleges that ACA, his former employer, discriminated against him on the basis of race (Count I) and sex (Count II) and retaliated against him (Count III), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  (ECF No. 1-2, ¶¶ 34–59).  He also asserts that ACA's discriminatory practices violated the Pennsylvania Human Relations Act ("PHRA") (Count IV).  (ECF No. 1-2, ¶¶ 60–66).  ACA removed the case to this Court on the basis of federal-question jurisdiction.  *See* 28 U.S.C. §§ 1331, 1441; *see also* 42 U.S.C. § 2000e-5(f)(3).[1]  ACA then filed a Motion to Dismiss (ECF No. 7), arguing that Coman failed to exhaust administrative remedies for his race discrimination claims and that he previously released all claims against ACA through a settlement agreement.  With respect to exhaustion, the Court will deny ACA's motion.  With respect to the alleged settlement

---

[1] The Court exercises supplemental jurisdiction over the PHRA claim.  *See* 28 U.S.C. § 1367(a).

agreement—which depends on material outside the pleadings—the Court will convert ACA's Motion to Dismiss to a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d), 56.

## I.  ANALYSIS

ACA makes two arguments in support of its Motion to Dismiss.  First, it asserts that Coman's race discrimination claims must be dismissed because he failed to exhaust administrative remedies for those claims.  (ECF No. 9, pp. 7–9).  Second, it contends that the Complaint should be dismissed in its entirety because the parties previously reached a settlement agreement, pursuant to which Coman released all claims against ACA.  (*Id.* at 4–6).  The Court will consider each argument in turn.

### A.  Exhaustion Requirement

Both Title VII and the PHRA require the exhaustion of administrative remedies prior to the filing of a lawsuit.[2]  *See* 42 U.S.C. § 2000e-5(b), (f)(1); 43 P.S. §§ 959, 962; *see also Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001); *Bailey v. Storlazzi*, 729 A.2d 1206, 1214 (Pa. Super. 1999).  To do so, a complainant must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  *See Burgh*, 251 F.3d at 469, 471.  That charge must be filed with the PHRC within 180 days of the last discriminatory act, *see* 43 P.S. § 959(h), and with the EEOC within 300 days of the last discriminatory act (so long as the charge was properly cross-filed with the state agency), *see* 42 U.S.C. § 2000e-5(e)(1).  A particular claim is deemed exhausted if it is "fairly within the scope of [1] the prior EEOC complaint, or [2] the

---

[2] The Court considers Coman's Title VII and PHRA claims together.  *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) ("We construe Title VII and the PHRA consistently."); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) ("The analysis of [Title VII and PHRA] claims is identical."); *Bailey v. Storlazzi*, 729 A.2d 1206, 1211 n.6 (Pa. Super. 1999) ("The PHRA is generally applied in accordance with Title VII.").

investigation arising therefrom." *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 207 (3d Cir. 2021) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).[3] This is a "highly fact specific" inquiry, and courts must "careful[ly] examin[e] . . . the nature of the relevant claims." *Id.*

Here, ACA asserts that Coman has failed to exhaust administrative remedies for his race discrimination claims and moves to dismiss those claims under Rule 12(b)(6). (ECF No. 9, pp. 7–9). *See, e.g., Francis v. Mineta*, 505 F.3d 266, 267 (3d Cir. 2007) (affirming dismissal of Title VII claim under Rule 12(b)(6) on ground that plaintiff failed to exhaust his administrative remedies). Attached to ACA's Motion to Dismiss is a copy of the Charge of Discrimination that Coman filed with the EEOC and PHRC on July 14, 2020. (ECF No. 8-1). Generally, "a district court ruling on a motion to dismiss [under Rule 12(b)(6)] may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.). However, there are a few exceptions to that general rule. A district court *may* consider the following: (1) exhibits attached to the complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); (2) documents that are "integral to or explicitly relied upon in the complaint," *Burlington*, 114 F.3d at 1426 (citation omitted), including, for example, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Benefit*, 998 F.2d at 1196; and (3) matters of public record, *Pension Benefit*, 998 F.2d at 1196.

In deciding ACA's Rule 12(b)(6) motion, the Court finds that it may consider Coman's Charge of Discrimination under the second and third exceptions. As to the second exception, Coman explicitly cited to the Charge of Discrimination in his Complaint. (ECF No. 1-2, ¶ 5).

---

[3] Though *Simko* involved a claim under the Americans with Disabilities Act ("ADA"), that statute expressly incorporates the administrative procedures of Title VII, including Title VII's exhaustion requirement. *See* 42 U.S.C. §§ 12117(a), 2000e-5; *see also Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999).

That document, moreover, is integral to Coman's discrimination and retaliation claims because it is a prerequisite to his ability to bring those claims in court. *See Simko*, 992 F.3d at 210 ("[T]he original charge is the touchstone of our exhaustion analysis."); *see also Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) ("[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint." (citation omitted)).   As to the third exception, the Charge of Discrimination was filed with two administrative agencies, making it a matter of public record. *See, e.g.*, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (in reviewing a dismissal under Rule 12(b)(6), "the formal charge" filed with the EEOC was considered); *Wormack v. Shinseki*, No. 2:09-cv-916, 2010 WL 2650430, at *1 n.1 (W.D. Pa. July 1, 2010) ("[I]n the Third Circuit, it is well settled that a court may consider administrative documents, such as a plaintiff's EEOC charges and public records without converting the motion to dismiss to a motion for summary judgment."); *cf. Schmidt*, 770 F.3d at 249 (holding that "SEC filings . . . are matters of public record of which the court can take judicial notice").

Upon review of the Charge of Discrimination and the Complaint, the Court holds that Coman has exhausted administrative remedies for each of his claims.  In the timely-filed Charge of Discrimination, Coman checked the boxes for discrimination based on "sex" and "retaliation." (ECF No. 8-1, p. 2).  He then gave a short narrative explaining that, between April 29 and May 15, 2020, he "was harassed by [his] supervisor because of [his] sex, male."  (*Id.*).  The female supervisor apparently "berate[d]" Coman when he asked for more details about assignments; changed deadlines to force him to work on weekends; sent "nasty emails" to him; and, at one point, said that "[his] behavior was typical of an arrogant, entitled, white male." (*Id.*).  Coman "filed a report with HR," but, on May 15, 2020, he was "discharged in retaliation for [his]

complaints." (*Id.*).  Coman's Complaint reiterates these same allegations, though it provides some additional details about interactions with his supervisor and a few human resources employees.  (ECF No. 1-2, ¶¶ 7–32).

Coman clearly exhausted administrative remedies for his sex-based discrimination and retaliation claims (Counts II, III, IV): those claims are "fairly within the scope" of the Charge of Discrimination.  *Simko*, 992 F.3d at 207.  Coman not only checked the appropriate boxes for those claims, but he also stated multiple times in the narrative that he was harassed because of his sex and retaliated against for filing a complaint.  Coman also exhausted administrative remedies for his race-based discrimination claims (Counts I, IV).  Although those claims are not fairly within the scope of the Charge of Discrimination—the single, minor reference to Coman being a "*white* male" (ECF No. 8-1, p. 2) is not sufficient—they are "fairly within the scope of . . . the investigation arising" from the Charge of Discrimination.  *Simko*, 992 F.3d at 207; *see id.* at 207 n.7 (explaining that the exhaustion inquiry is a "disjunctive test" and only one of the two prongs need be satisfied).  Coman's race-based discrimination claims "arise[] from the same set of facts that support" his sex-based discrimination claims.  *Id.* at 209.  Specifically, Coman asserts that the same person (his supervisor) discriminated against him on the same occasions (between April and May of 2020) because of both his sex *and* his race.  Accordingly, the two types of claims are "sufficiently related such that a reasonable investigation of the original charge would address" the race discrimination claims.  *Id.* at 211; *see also Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978) (where a charge alleged only race discrimination, holding that there was a genuine issue as to whether "a reasonable investigation of the charge as filed would have encompassed . . . sex discrimination" because "there is a close nexus between the

facts supporting the claims of race and sex discrimination"). That is enough to satisfy the exhaustion requirement.

Coman has properly exhausted administrative remedies for each of his claims, including those alleging race discrimination. The Court will deny ACA's Motion to Dismiss with respect to the alleged failure to exhaust administrative remedies for the race-based discrimination claims.

### B. Alleged Settlement Agreement

ACA alternatively moves to dismiss the Complaint on the ground that the parties previously reached a settlement agreement. (ECF No. 9, pp. 4–6). ACA labels this as a Rule 12(b)(1) motion,[4] arguing that "the Court lacks subject matter jurisdiction over this case" because "the Parties already resolved the claims at issue" and "there is no case or controversy for the Court to hear." (*Id.* at 6).

That argument, however, misses the mark. An affirmative defense premised on a settlement agreement implicates a plaintiff's ability to state a claim upon which relief can be granted, not this Court's subject-matter jurisdiction. *See, e.g., Levy Grp., Inc. v. Land, Air, Sea & Rail Logistics, LLC*, No. 20-3839, 2021 WL 288567, at *2 (D.N.J. Jan. 28, 2021) (compiling cases in which courts in the Third Circuit have "considered a defendant's motion to enforce a settlement agreement under a Rule 12(b)(6) standard"). Contrary to ACA's arguments, the Court has subject-matter jurisdiction over this Title VII and PHRA action—pursuant to 28 U.S.C. §§ 1331, 1367(a) and 42 U.S.C. § 2000e-5(f)(3)—regardless of whether the parties entered into a settlement agreement. *See Fort Bend County v. Davis*, 139 S. Ct. 1843, 1850 (2019); *see also id.* at 1848 ("In recent years, the Court has undertaken '[t]o ward off profligate use of the term

---

[4] ACA presumably does so because factual attacks under Rule 12(b)(1) permit a court to consider evidence beyond the pleadings, *see Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), and ACA relies heavily, if not exclusively, upon such extrinsic evidence (*see* ECF No. 9, pp. 4–6).

['jurisdiction'].'" (citation omitted)).  That ACA may ultimately prevail on this defense does not mean that there was never a 'case or controversy' in the first place.  The Court therefore finds that ACA has mislabeled its motion as arising under Rule 12(b)(1) and will instead treat it as a Rule 12(b)(6) motion.  *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268–69, 272–73 & n.14 (3d Cir. 2016); *Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 120, 127 n.12 (3d Cir. 2016); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991); *see also Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 820 (7th Cir. 2016) ("[W]hen appropriate, a court may treat a motion filed under Rule 12(b)(1) as if it were a Rule 12(b)(6) motion.").

In support of its motion, ACA has presented a series of emails regarding settlement negotiations between the parties.  (ECF Nos. 8-2, 8-3).  As discussed above, however, courts may only consider certain extrinsic evidence when evaluating a Rule 12(b)(6) motion.  The emails do not fall within any of the permissible categories.  They were not attached to the Complaint, nor were they referenced in the Complaint, either explicitly or implicitly.  They are not matters of public record.  Finally, they do not form the basis of any of Coman's claims (but rather, only the basis of ACA's affirmative defense).  *See, e.g., Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 280 (3d Cir. 2018) (declining to consider a letter attached to a motion to dismiss "because the claims in the . . . complaint are not based on it"); *Schmidt*, 770 F.3d at 249–50 (holding that press releases and updates from a website "may not be considered at the motion to dismiss stage" because "[t]hey are not integral to the complaint").  In short, these documents are "off limits at this stage of the litigation."  *See Levins*, 902 F.3d at 280.

Nevertheless, the Court recognizes that the emails (and potentially other material beyond the pleadings) are essential to resolving ACA's defense—that is, the Court cannot determine

whether the parties entered into a settlement agreement without considering extrinsic evidence. The Court therefore declines to exclude this extrinsic evidence. The Federal Rules of Civil Procedure mandate the next step:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). In accordance with Rule 12(d), the Court will convert ACA's Motion to Dismiss to a Motion for Summary Judgment and will afford the parties an opportunity to present additional relevant material.[5]

## II.  CONCLUSION

For the foregoing reasons, and with respect to the exhaustion requirement, the Court will deny ACA's Motion to Dismiss (ECF No. 7). With respect to the alleged settlement agreement, the Court will convert ACA's Motion to Dismiss to a Motion for Summary Judgment under Rule 56. An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated:

12/14/21

---

[5] Coman indicated that he would present additional evidence should the Court convert the Motion to Dismiss to a Motion for Summary Judgment. (ECF No. 11, p. 5 n.5). *See Pension Benefit*, 998 F.2d at 1196 ("The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.").